IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CELANESE CORPORATION and § | | |
| CELANESE (NANJING) CHEMICAL CO., § | | |
| LTD., § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | CIVIL ACTION NO.: |
| § | | 3:06-CV-1462-P |
| THE BOC GROUP PLC, § | | |
| § | | |
| Defendant. § | | |
| § | | |

**MEMORANDUM OPINION AND ORDER**

Now before the Court is Defendant The BOC Group plc's ("BOC plc" or "Defendant") Motion to Compel Arbitration or Stay Proceedings Pending Final Award in the ICC Arbitration, filed August 21, 2006,[1] and Plaintiffs Celanese Corporation and Celanese (Nanjing) Chemical Co., Ltd.'s ("Celanese Nanjing") (collectively "Plaintiffs") Motion for Remand, filed September 11, 2006.[2] After reviewing the briefing and applicable law, the Court DENIES Defendant's

---

[1] Plaintiffs filed a Response on September 11, 2006, and Defendant filed a Reply on October 13, 2006. On November 8, 2006, Defendant filed an unopposed Motion for Leave to file a Supplemental Letter Brief advising the Court of additional authority decided after Defendant filed its Reply. The Court granted Defendant leave to file the Supplemental Letter and then, on November 13, 2006, granted Plaintiffs leave to file a Response to the Supplemental Letter.

[2] Defendant filed a Response on October 10, 2006, and Plaintiffs filed a Reply on October 25, 2006. All other motions have been stayed pending the outcome of the instant Motion to Compel and Motion to Remand. (*See* Order of Oct. 16, 2006.)

Motion to Compel and GRANTS Plaintiff's Motion to Remand, subject to the stay provided in the Court's Order of October 16, 2006.[3]

## I.     Factual Background and Procedural History

This action involves negotiations and a resulting contract between two wholly-owned subsidiaries and their parent companies regarding construction of a new acetic acid manufacturing plant in China.  In 2002, BOC plc, a British Company, and Celanese AG, a German company, began discussing the possibility of building a new acetic acid facility in the Nanjing Chemical Industry Park ("NCIP") in Nanjing, China.  (Pls.' Resp. at 2.)  BOC plc and Celanese AG contemplated the idea that Celanese Nanjing, a wholly owned subsidiary of Celanese AG, would build and operate the plant and BOC Nanjing, a wholly owned subsidiary of BOC plc, would construct an industrial gases plant to supply Celanese Nanjing with carbon monoxide and other natural gases necessary to manufacture acetic acid.  (*Id*.)  On May 21, 2004, BOC plc, BOC Nanjing, Celanese AG, and Celanese Nanjing solidified this arrangement and executed the Carbon Monoxide and Other Gases Supply Agreement (the "Agreement").  (*Id*.)  The Agreement expressly provides that New York law will govern.  (Def.'s App. in Supp. of Mot. to Compel ("Def.'s App.") at 53.)

When addressing dispute resolution, Article 21.1 of the Agreement states:

If any dispute or difference of any kind whatsoever (a "Dispute") shall arise between the Parties in connection with, or arising out of, this Agreement, or the breach,

---

[3] The Order Staying Proceedings states that the decision on the motion to compel arbitration and motion to remand shall be stayed pending appeal to the Fifth Circuit; thus, the parties are free to appeal the Court's decision denying the motion to compel.  Upon resolution of that appeal, if the Fifth Circuit affirms, the case will be remanded to state court for further proceedings, including the decision of whether to stay the claims asserted in the instant action pending the resolution of the ongoing ICC arbitration.

> termination or validity hereof, each of [BOC Nanjing] and [Celanese Nanjing] shall designate in writing to the other Party a senior representative who shall be authorized to resolve such Dispute on its behalf.  If the designated representatives are unable to resolve a Dispute under this Agreement within thirty (30) days of receipt of notice of a Dispute by a Party, such Dispute shall be referred as appropriate, to technical arbitration in accordance with Section 21.2 or to general arbitration in accordance with Section 21.3.

(*Id*. at 45-46.)  The general arbitration provision in Article 21.3 reads as follows:

> In the event that a Dispute is not technical in nature or one Party timely objects that a Dispute is not a Technical Dispute in accordance with Section 21.2(a),[4] the Dispute shall be resolved by arbitration conducted in accordance with the Rules of Arbitration and Conciliation of the International Chamber of Commerce ("ICC") as in effect at the time of the arbitration ("the <u>Rules</u>").

(*Id*. at 46.)  The parent companies Celanese AG and BOC plc were signatories to the Agreement, but not included in the definition of the terms "Party" or "Parties" used in the general arbitration clause; the term "Parties" refers only to Celanese Nanjing and BOC Nanjing.  (Def.'s Mot. at 3 n.4; Def.'s App. at 2, 10.)  Additionally, in accordance with Article 25 of the Agreement, the parent companies Celanese AG and BOC plc signed guaranties to ensure the performance and financial obligations of Celanese Nanjing and BOC Nanjing respectively.  (Pls.' Resp. at 3; Def.'s App. at 50; Pls.' App. in Opp'n to Mot. to Compel ("Pls.' App.") at 7-17.)

On June 30, 2006, Celanese Corporation, an American affiliate of Celanese AG and a nonsignatory to the Agreement, and Celanese Nanjing filed suit against Defendant BOC plc in state court in Dallas County, Texas for tortious interference with prospective business relationships, unfair competition, breach of confidence, fraud in the inducement, and tortious interference with a contract.  (Def.'s Mot. at 3.)  Defendant removed the action to this Court on

---

[4] It is undisputed that the allegations in question are not appropriate for technical arbitration.

August 14, 2006, because the subject matter of the state action allegedly relates to the arbitration provision in Article 21 of the Agreement. (*See* Notice of Removal at 1-2.) On that same day, Defendant and BOC Nanjing initiated an arbitration against Celanese AG, Celanese Corporation and Celanese Nanjing pursuant to the ICC Rules and, purportedly, Article 21 of the Agreement. (Def.'s Mot. at 4.) The International Court of Arbitration formally registered and notified Plaintiffs of the pending arbitration and Defendant now asks the Court to compel the claims involved in the instant action to that ICC arbitration. (*See generally* Def.'s Mot. to Compel.) Plaintiffs maintain that arbitrability of their claims is inappropriate and, in turn, this case should be remanded to state court for further determination. (*See generally* Pls.'s Mot. to Remand.)

II.     **Motion to Compel**

The Court first determines whether BOC plc can compel Celanese Corporation and Celanese Nanjing to arbitrate their claims in the pending arbitration.

   A.     **Issues of Arbitrability**

As a threshold matter, Defendant avers that the arbitral tribunal has the power to decide their own jurisdiction over the claims and parties in this action. (*See* Def.'s Supplemental Letter of Nov. 8, 2006.)[5] The general rule is that "the 'question of arbitrability . . . is undeniably an

---

[5] After filing a Reply, Defendant filed new authority from the Federal Circuit regarding the issue of whether this Court or the arbitral tribunal has jurisdiction to determine which parties and claims are subject to the arbitration agreement. Plaintiffs responded to this supplemental authority and argued that the case submitted by Defendant is distinguishable from the facts at hand and has no bearing on the Motion to Compel and, moreover, Defendant uses this new case to raise an argument it could have raised in its initial briefing; therefore, the supplemental material should be disregarded. The Court agrees that this particular jurisdictional issue could have been raised by Defendant in its initial Motion to Compel and Reply; irregardless, the Court has the liberty to raise such a jurisdictional issue *sua sponte* and chooses to address this threshold issue before reaching the merits of the Motion to Compel. *See Commerce Park v. Mardian Constr. Co.*, 729 F.2d 334, 340 (5th Cir. 1984) (affirming a state court's *sua sponte* determination that the action was arbitrable).

issue for judicial determination.'" *Qualcomm, Inc. v. Nokia Corp.*, No. 2006-1317, 2006 U.S. App. LEXIS 25942, at *15 (Fed. Cir. Oct. 20, 2006) (quoting *AT&T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986)). "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (quoting *AT&T Techs., Inc.*, 475 U.S. at 649). Defendant argues that, under *Qualcomm*, because the Agreement called for arbitration in accordance with the ICC Rules, the parties evidenced a clear intent to arbitrate the issue of arbitrability and, consequently, the arbitrator in the pending ICC arbitration must resolve whether the claims in the instant action are arbitrable. (*See* Def.'s Supplemental Letter of Nov. 8, 2006.)

*Qualcomm* involved a contract in which the parties agreed that "[a]ny dispute, claim or controversy arising out of or relating to this Agreement, or the breach or validity hereof, shall be settled by arbitration in accordance with the arbitration rules of the American Arbitration Association ('AAA Rules')." *Qualcomm*, 2006 U.S. App. LEXIS, at *16. The AAA Rules state that the arbitration tribunal "shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." *Id*. (internal citation omitted). The court in *Qualcomm* adopted the reasoning of both the First and Second Circuits and found this language indicated a "clear and unmistakable" intent by the parties to delegate the power to decide aribtrability to the arbitrator. *Id*. at *17; *see also Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 211 (2d Cir. 2005) (holding that a party who agreed to arbitration pursuant to the AAA Rules cannot avoid arbitration of issues of arbitrability); *Apollo Computer, Inc. v. Helge Berg*, 886 F.2d 469, 473 (1st Cir. 1989) (holding that by

contracting to have all disputes resolved according to the ICC Rules, the signatories to the agreement were bound by the ICC "provisions clearly and unmistakably allow[ing] the arbitrator to determine her own jurisdiction when . . . there exists a *prima facie* agreement to arbitrate").

After review of *Qualcomm*, *Contec,* and *Apollo*, the Court finds this line of cases distinguishable from the facts at hand. Following the reasoning of the First, Second, and Federal Circuits, the arbitrator in the pending ICC arbitration has jurisdiction to decide issues of arbitrability only between the parties to the arbitration agreement–Celanese Nanjing and BOC Nanjing–the latter of which is not a party to this action. The cases extending this reasoning and allowing a nonsignatory to compel a signatory to arbitrate issues of arbitrability involve a nonsignatory defendant that essentially stood in the shoes of a signatory to the arbitration agreement when defending the suit. More specifically, *Apollo* involved an arbitration agreement between two companies, one of which filed for bankruptcy; the bankruptcy trustee assigned Apollo's right to bring suit to the nonsignatory defendants, which the court allowed to compel the plaintiff signatory company to arbitrate issues of arbitrability. *See Apollo*, 886 F.2d at 470-74. In *Contec*, the nonsignatory defendant was a later corporate form of the original signatory to the arbitration agreement, and the mergers and changes in corporate form had not affected the business relationship between the two companies. *See Contec*, 398 F.205 at 207. The court allowed the nonsignatory defendant to compel the signatory to arbitrate issues of arbitrability because the defendant was essentially equivalent to the original signatory to the arbitration agreement. *Id*. In light of these cases and the general presumption against compelling a nonsignatory to arbitration, the Court does not find the relationship between the signatory subsidiary BOC Nanjing and the nonsignatory parent company BOC plc sufficient to warrant

compelling Plaintiffs to arbitrate the question of arbitrability with BOC plc. As discussed in detail below, both BOC plc and BOC Nanjing were signatories to the Agreement, and yet BOC plc expressly excluded themselves as a party to the arbitration clause. Although the arbitration agreement may evidence clear and unmistakable intent to arbitrate questions of arbitrability between the two parties to that agreement, this hardly evidences a clear intent between BOC plc and Plaintiffs to arbitrate questions of arbitrability when BOC plc and BOC Nanjing acted as separate entities when negotiating the Agreement and BOC plc chose to be a non-party to the arbitration clause. Thus, the Court finds the equitable considerations that led the courts in *Apollo* and *Contec* to compel the parties to arbitrate issues of arbitrability are not present in the instant case and retains jurisdiction over issues of arbitrability. The Court now turns to the substantive arguments regarding whether to compel Plaintiffs to arbitrate their claims against Defendant.

### B.      Real Party in Interest

Defendant urges the Court to compel Plaintiffs' claims to arbitration because the business torts Plaintiffs assert are within the scope of the Agreement's arbitration clause and Plaintiffs' decision to sue BOC plc, a nonsignatory to the arbitration agreement, and not BOC Nanjing, the "real party in interest," cannot allow them to now escape arbitration. (Def.'s Mot. at 5-6.)

The Court does not find this argument persuasive. Plaintiffs allege that BOC plc committed separate and distinct tortious acts from BOC Nanjing; at this early stage in the case the Court does not have before it the evidence to determine whether or not BOC plc actually committed such actions. The Court cannot simply take BOC plc's assertion that it was not in a position to commit such acts because it "has no facilities in China and instead has its principal

place of business in England" at face value and discard Plaintiffs' allegations. Defendant also states that the breach of confidence claims involve only BOC Nanjing's duty under the confidentiality clause in the Agreement, but fails to acknowledge Plaintiffs' allegation in their Complaint of a confidentiality agreement between BOC plc and Plaintiffs separate from the Agreement. (*See* Pls.' Compl. ¶ 43.) These seemingly separate allegations against BOC plc rebut Defendant's argument that Plaintiffs can only maintain claims against the "real party in interest," BOC Nanjing.

Additionally, the cases Defendant cites in support of its contention that BOC Nanjing is the "real party in interest" differ factually from the case at hand. For example, in *McCowan*, the court compelled arbitration of claims against a nonsignatory because the court found the claims against the nonsignatory defendant part of a single controversy involving the signatory defendant, and failing to order those claims to arbitration would inhibit the signatory's right to arbitration. *See McCowan v. Sears, Roebuck & Co.*, 908 F.2d 1099, 1106-07 (2d Cir. 1990). As noted above, Plaintiffs' alleged conduct against BOC plc, on the face of the Complaint, is distinct from any tortious conduct of BOC Nanjing and, therefore, resolution of the claims against BOC plc in this Court cannot be said to inhibit BOC Nanjing's right to arbitrate. Further, in *Hollingsworth*, the court found that allowing the plaintiffs to assert claims against nonsignatory agents rather than the signatory company subverted the intent of the arbitration agreement because the plaintiff alleged misconduct against the signatory company without actually naming them as a party. *Doctor's Assocs., Inc. v. Hollingsworth*, 949 F. Supp. 77, 83-84 (D. Conn. 1996). In this case, the court found a deliberate attempt by the plaintiffs to avoid arbitration by failing to name a signatory to the arbitration agreement as a defendant; the Court

finds no such overt attempt in this case. Plaintiffs neither assert misconduct directly against BOC Nanjing nor assert conduct related solely to BOC plc's obligations under the contract; therefore, the claims against BOC plc and the claims by the BOC entities in the pending arbitration cannot be said to necessarily involve interdependent conduct by BOC plc and BOC Nanjing. Whether BOC Nanjing is actually the party to blame for tortious acts alleged against BOC plc is not apparent to the Court from the Complaint. Based on the allegations against BOC plc of separate and distinct tortious conduct, the Court cannot compel Plaintiffs to arbitrate their claims under the theory that BOC Nanjing is the "real party in interest."

### C. Equitable Estoppel

Defendant further argues that the Court must compel Plaintiffs to adjudicate their claims in the pending arbitration under the doctrine of equitable estoppel. (Def.'s Mot. at 5-6.) Plaintiffs counter that the intentional exclusion of the parent companies as parties to the arbitration clause allows BOC plc and Celanese AG "to be bound by and/or benefit contractually only from provisions in which they are expressly identified, and this was done for the mutual advantage and with the consent of both BOC plc and Celanese AG." (Pls.' Resp. at 3.) Thus, BOC plc expressly agreed not to be bound by the arbitration clause and cannot now seek to compel arbitration. (*Id*. at 4.) In contrast, Defendant states that the decision to have the parent companies as signatories to the Agreement but not the arbitration clause does not reflect a conscious decision by BOC plc to avoid arbitration; instead, the decision to have the parent companies sign the Agreement, rather than the guaranties alone, supports the parties' intention to arbitrate all claims involving the Nanjing project in accordance with Article 21 because the

foreign parent companies' signatures on the Agreement allow arbitration to occur before the ICC and not Chinese arbitral institutions. (Def.'s Reply at 5-6.)

The Fifth Circuit applies a bifurcated analysis to determine whether parties must be compelled to arbitrate. *Wash. Mut. Fin. Group, L.L.C v. Bailey,* 364 F.3d 260, 263 (5th Cir. 2004). A court must first determine whether a valid agreement to arbitrate exists between the parties. *Id.* Whether a valid arbitration agreement exists is a matter of contract construction. *Id.*; *see also Double G Energy, Inc. v. AT Gas Gathering, Inc.*, No. 3:05-CV-0749-P, 2005 U.S. Dist. LEXIS 15544, at *7 (N.D. Tex. July 28, 2005) ("In determining whether a valid arbitration agreement exists between the parties, ordinary contract principles determine who is bound." (internal citations omitted)). Under general contract principles, a party cannot be compelled to arbitrate absent its express agreement. *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 361 (5th Cir. 2003). Thus, who is bound to an arbitration agreement is generally determined based on the intention of the parties. *Id.* at 356. "Although a party that has not expressly agreed to arbitration will generally not be compelled to arbitrate claims, a non-signatory may compel arbitration under an equitable estoppel theory." *Double G Energy, Inc.*, 2005 U.S. Dist. LEXIS 15544, at *7 (citing *Grigson v. Creative Artists Agency, L.L.C.,* 210 F.3d 524 (5th Cir. 2000)).

In *Grigson*, the Fifth Circuit adopted the Eleventh Circuit standard for equitable estoppel and held that a party may be equitably estopped from avoiding arbitration in two situations. First, equitable estoppel is appropriate

> when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of the signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and related directly to the written agreement, and arbitration is appropriate.

*Grigson*, 210 F.3d at 527. This court held in *Double G Energy, Inc.* that *each* claim must rely on the language of the agreement, rather than just presume its existence, for this basis of equitable estoppel to apply. *Double G Energy, Inc.*, 2005 WL 1837953, at *8; *see also Westmoreland v. Sadoux*, 299 F.3d 462, 467 (5th Cir. 2002) (stating that equitable estoppel is appropriate "when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the non-signatory."). Plaintiffs allege the following claims against Defendant: (1) tortious interference with prospective business relationship; (2) unfair competition; (3) breach of confidence; (4) fraud in the inducement; and (5) tortious interference with a contract. Although some of the claims, such as fraud in the inducement, clearly presume the existence of the Agreement, each of the claims does not rely on the terms of the Agreement. For example, Plaintiffs' claim for tortious interference with a prospective business relationship discusses BOC plc's purported efforts to prevent Plaintiffs from contracting with other companies. This claim does not rely on the terms of the Agreement, but rather alleges conduct separate from BOC plc's obligations under the Agreement. Because each of Plaintiffs' claims fails to rely on the terms of the Agreement, the Court finds the first basis for equitable estoppel has not been met and will not compel Plaintiffs to arbitration on this ground.

      The Fifth Circuit further held in *Grigson* that "application of equitable estoppel is warranted when the signatory to the contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Id*. The instant action presents an uncommon scenario

not directly addressed by the cases cited by the parties.  Plaintiffs chose to sue only BOC plc, who is a signatory to the contract, but not a party to the arbitration clause and failed to bring any claims against BOC Nanjing, the other party bound by the arbitration clause.  Plainly, the second basis for compelling arbitration discussed in *Grigson* is only met if a signatory to the arbitration clause alleges interdependent conduct by both a signatory and a nonsignatory to the arbitration agreement and the nonsignatory defendant seeks to compel the signatory plaintiff to arbitrate all claims.  *See, e.g., Brown v. Pac. Life Ins. Co.*, 462 F.3d 384 (5th Cir. 2006) (compelling a plaintiff to arbitrate claims against a parent company who was not a party to the arbitration agreement because the claims were factually tied to claims alleged against subsidiaries who were parties to the arbitration agreement).  If BOC Nanjing were included in Plaintiffs' allegations, this case would be more appropriate for equitable estoppel; however, because Plaintiffs allege no conduct involving BOC Nanjing, but instead allege purportedly separate and distinct tortious conduct by the parent company, the Court cannot compel Plaintiffs to arbitration.  Further, Celanese Corporation is not a signatory to the contract at all.  The Court cannot compel the nonsignatory plaintiff Celanese Corporation to arbitrate their claims under an arbitration provision between the other plaintiff, Celanese Nanjing, and an entity not a party to this action, BOC Nanjing.

      This case contains a final factor that further weighs against compelling arbitration in the instant case.  BOC plc was involved in the negotiations process and at one point a party to the arbitration agreement; however, in the end, BOC plc was a signatory to a contract which expressly excluded BOC plc from the confines of the arbitration agreement.  The motives BOC plc offers for this decision does not change the plain language of the contract which states that

only disputes *between the parties to the arbitration clause* shall be arbitrated. The Fifth Circuit has stated that "[a]n agreement to arbitrate is a waiver of valuable rights that are . . . personal to the parties." *Westmoreland*, 299 F.3d at 465. Further, "just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory." *Contec*, 398 F.3d at 209. Because BOC plc was aware of the arbitration agreement and seemingly had an opportunity to participate in such agreement, yet, for whatever reason, expressly chose not to do so, the Court cannot now allow BOC plc to force Celanese Nanjing and Celanese Corporation to arbitrate their claims against only BOC plc. After all, "the linchpin for equitable estoppel is equity – fairness." *Grigson*, 210 F.3d at 528. Therefore, the Court DENIES Defendant's Motion to Compel.[6]

### III.  Motion to Remand

The Court next turns to Plaintiffs' Motion to Remand. Plaintiffs asks that, if the Court determines that Plaintiffs cannot be compelled to arbitration, the action be remanded to state court for lack of subject matter jurisdiction. Defendant counters that the Court should reserve any decision on the motion to remand until after any appeal from the motion to compel has been resolved, and, in any event, Plaintiffs motion to remand is without merit because: (1) this Court has mandatory subject matter jurisdiction over the action removed pursuant to Section 205 even if the parties are not actually compelled to arbitrate; and, (2) even if jurisdiction is discretionary,

---

[6] The parties also argue over the significance of Article 16.5 of the Agreement and whether that clause allows the Plaintiffs to sue in court in lieu of arbitration. Because the Court refuses to compel Plaintiffs to arbitrate their claims, the Court does not reach this issue.

this Court should retain jurisdiction because of the international nature of the dispute and close relationship with the pending arbitration.

The Defendant removed the instant action solely on the basis of 9 U.S.C. § 205, which states: "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the [Convention on the Recognition and Enforcement of Foreign Arbitral Awards], the defendant or the defendants may, at any time before the trial thereof, remove such action . . . ." 9 U.S.C § 205.[7] The parties rely on *Beiser v. Weyler* in support of their arguments, which states in relevant part:

> Under § 205 . . . the federal issue in cases will often be resolved early enough to permit remand to the state court for a decision on the merits. The arbitrability of a dispute will ordinarily be the first issue the district court decides after removal under § 205. If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court. *See* 28 U.S.C. § 1441(c) (granting district court discretion to remand all claims in which state law predominates); *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (noting that when all federal claims are resolved early in a lawsuit and only state law claims remain, the district court almost always should remand to the state court); *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989) (same). Except for state law claims that turn out to be subject to arbitration, § 205 will rarely permanently deprive a state court of the power to decide claims properly brought before it. The district court will ordinarily remand those cases that turn out not to be subject to arbitration, such that the state court will be able to resolve the merits of the dispute.

284 F.3d 665, 674 (5th Cir. 2002).

---

[7] The parties do not dispute that the arbitration agreement in question falls under the Convention.

The Court finds that, under *Beiser*, the case should now be remanded. All of Plaintiffs' claims are based on state law[8] and the Court has found such claims are not arbitrable; absent § 205, no other basis for federal jurisdiction exists.[9] Defendant argues that § 205 confers mandatory federal question and the Court cannot now remand. The Court disagrees. *Beiser* proposes that although removal of state law claims may be initially proper under §205 as claims that "relate to" an arbitration agreement, once they are determined not to be arbitrable, remand to state court is appropriate. 284 F.3d at 674; *see also Certain Underwriters at Lloyd's v. Warrantech Corp.*, 4:04-CV-208-A, 2004 U.S. Dist. LEXIS 29953, at *8 ("Consistent with the expectations of the Fifth Circuit, now that the arbitration award issues have been removed from this case by a summary ruling, and there being 'no other grounds for federal jurisdiction' in this case, the case should be remanded to the state court."). Although federal question jurisdiction is initially mandatory, once the basis for federal question jurisdiction ceases to exist, or as in the instant case, when arbitrability is the basis for jurisdiction and can no longer be asserted as a defense, the case should be remanded for resolution of the remaining claims in which state law predominates. Accordingly, the Court GRANTS Plaintiff's Motion to Remand this action to State court for a decision on the merits of the state law claims. The Court further ORDERS that

---

[8] As noted above, Plaintiffs allege state law claims against Defendant for: (1) tortious interference with prospective business relationship; (2) unfair competition; (3) breach of confidence; (4) fraud in the inducement; and (5) tortious interference with a contract.

[9] Because the Court has determined that Plaintiffs' claims are not subject to the arbitration agreement, the Court finds Defendant's argument that the claims are "intertwined with a foreign arbitration agreement . . . and the dispute is international in nature," stated without citing legal authority, is insufficient to invoke federal subject matter jurisdiction.

remand not be effectuated until the resolution of any appeal from the order denying Defendant's Motion to Compel.[10]

## IV.   Conclusion

For the foregoing reasons, the Court DENIES Defendant's Motion to Compel Arbitration or Stay Proceedings Pending Final Award in the ICC Arbitration.  Further, the Court GRANTS Plaintiffs' Motion to Remand and REMANDS the action to State court upon resolution of any appeal taken from the decision of this Court regarding arbitrability.  Finally, because the Court believes it no longer has jurisdiction over this action, it does not reach the issue of whether these proceedings should be stayed pending the outcome of the ICC arbitration and leaves that issue for determination by the State court.

**IT IS SO ORDERED.**

Signed this 6th day of December 2006.

JORGE A. SOLIS
UNITED STATES DISTRICT JUDGE

---

[10] A decision to remand for lack of subject matter jurisdiction cannot be appealed.  28 U.S.C. § 1447(d).  A denial of a motion to compel arbitration, however, is appealable.  9 U.S.C. § 16(a)(1)(C).  Because of this, the Fifth Circuit states in *Beiser* that the proper procedure for remand in a case such as this is to seek resolution of the issue of arbitrability and then, if the claims are found not to be arbitrable and no other basis for federal jurisdiction exists, move for remand of the action.  *Id*.  In the instant case, the Parties agreed to litigate the Motion to Compel and the Motion for Remand in this Court, and the Court issued an order agreed to and submitted by all parties which states:

> [t]his Court's decisions on BOC's motion to compel and Celanese's motion for remand shall be stayed pending appeal to the Fifth Circuit.  Because any remand . . . would be appropriate (if at all) only after appeal to the Fifth Circuit . . . the Parties agree that the Court should order no remand until after the appeal is decided (*i.e.*, the Fifth Circuit has issued its mandate or determined not to hear an appeal) or no appeal is taken (*e.g.*, neither Party has filed a timely notice of appeal).

(Order of Oct. 16, 2006.)  Accordingly, by agreement of the parties, the Court finds that, upon resolution of the appeal, provided it does not affect the outcome of this Court's decision regarding arbitrability, this case be REMANDED to state court; otherwise, this action will proceed according to the instruction of the Fifth Circuit.